# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed January 17, 1905.

ELIZABETH H. BELL, JOHN H. BELL AND GEORGE D. HAMMERSLEY

VS.

ALBERT N. HORNER AND MARY D. HORNER.

*Harry E. Mann* and *Joseph B. Seth* for plaintiffs.

*Charles F. Harley* for defendants.

SHARP, J.—

The bill in this case was filed by the plaintiffs against the defendants to procure a decree annulling and setting aside certain deeds made by Elizabeth B. Hammersley to Albert N. Horner and Mary D. Horner, the execution of which, it is alleged, was obtained by fraud and undue influence. It is also alleged that Mrs. Hammersley, at the time of their execution, was mentally incapable of making a valid deed or contract.

The facts, as they appear from the evidence, are as follows:

On July 29th, 1899, Mrs. Elizabeth B. Hammersley executed four deeds. One of these deeds conveyed, in consideration of five dollars, and for other good and valuable considerations, leasehold property on the east side of Pearl street near Fayette street, to George D. Hammersley, one of the plaintiffs and a grandson of Mrs. Elizabeth B. Hammersley, for life, with remainder to Mrs. Mary D. Horner, one of the defendants, a daughter of Mrs. Hammersley and the wife of Albert N. Horner. The life estate given to George D. Hammersley was on condition that he paid all the expenses on the property within sixty days after their maturity. Upon his failure to do so his life estate immediately ceases and Mrs. Horner becomes entitled to

the property. This property is subject to an annual ground rent of $80.

The second deed conveyed in consideration of five dollars and for other good and valuable considerations leasehold property on the east side of Pearl street, near Fayette street, to the plaintiff, Elizabeth Hammersley Bell, a grandaughter of Mrs. Hammersley, for life, with remainder to her children. This deed contains the condition that the grantees shall pay all the expenses on the property within sixty days after their maturity. On failure to do so the interest of Mrs. Bell and her children in the property ceases and Mrs. Mary D. Horner becomes entitled to the property immediately. This property is subject to an annual ground rent of $75.

These deeds were made without the knowledge of the grantees, were never delivered to them by Mrs. Hammersley, and were recorded by Albert N. Horner, June 13, 1902, which was a little more than a week after the death of Mrs. Hammersley.

The third deed conveyed, in consideration of five dollars and for other good and valuable considerations, to the defendant, Mary D. Horner, all the personal property, goods and chattels, and personalty of Mrs. Hammersley contained in two dwelling houses, 108 N. Greene street and 2145 N. Fulton avenue.

The fourth deed, in consideration of five dollars, and for other good and valuable considerations, conveyed to Albert N. Horner property described as follows: "All the real estate, feesimple, leasehold, ground rents, and all other property and evidences of debts due, of all kinds and descriptions, not mentioned in the personal property goods and chattels deed priorily executed by me. This shall include all notes, book accounts and insurance policies."

The deed further provides: "All persons and corporations are hereby authorized to accept a certified copy of this paper as full authority and acquittance to them, and this paper shall be a full release to them as against all other claims at law or in equity. The purpose and intent of this deed being to make an absolute grant of all the estate not before deeded by myself, Elizabeth B. Hammersley, and to include all the property deeded me by my late husband, David M. Hammersley, deceased."

This deed was absolute. Mr. Horner says in his answer to the interrogatories: "No part of said property was impressed with any trust." "The deed was in the nature of a gift."

This deed, together with the deed of the personal property, was recorded June 13th, 1903, the same time as the two deeds which have already been mentioned.

At the time these deeds were made Mrs. Hammersley's nearest of kin were her daughter, Mrs. Horner; her son, William H. Hammersley, and two grandchildren, Mrs. Bell, and George D. Hammersley, the plaintiffs in this case, who were the children of George W. Hammersley, a deceased son of Mrs. Hammersley.

The effect of these deeds was to deprive Mrs. Hammersley of all her property and to exclude her son, William H. Hammersley, entirely from any benefit in her property, including what she had received from her deceased husband, the father of W. H. Hammersley. Her daughter, Mrs. Horner, received only the chattels contained in the two houses referred to, with a contingent remainder in two houses on Pearl street, subject to particular estates in Mrs. Bell and her children and Mr. George D. Hammersley. The children of her deceased son received life estates in leasehold property subject to considerable ground rents and of comparatively small value. The balance of property is conveyed to her son-in-law, Albert N. Horner absolutely.

The exact amount, the location and the value of the property conveyed to Mr. Horner do not certainly appear. The property is not described in the deed. But it appears from the evidence that Mrs. Hammersley certainly owned at the time the deeds were made the following property, all of which would pass to Horner under the terms of the deed: One house on Pearl street near Fayette street, 106 and 108 N. Greene street, a house on Etting street, a house on East Monument street, two houses on North Fulton avenue, Nos. 2101 and 2145, a ground rent on Harrison street, and a ground rent on Monument street, besides the two houses on Pearl street conveyed to her grandchildren and the chattels given to Mrs. Horner.

Mrs. Hammersley was at this time about 74 years old. She had been in bad health for some time, and shortly before these deeds were made had been desperately ill. Her disease was described by Dr. Charles F. Bevan, her attending physician, as "a primary valvular disease of the heart, and secondary hypertrophy of that organ, with a general failure of circulation, resulting in a general dropsy."

Dr. Bevan was first called to see her in the Spring of 1899. In July, 1899, her condition was so serious he was obliged to call twice a day. She improved somewhat, but never recovered her health, and died in June, 1902. At the time the deeds were made she was confined to the house, and was not able for some time afterwards to leave the house to take a short ride. Dr. Bevan says that when he first saw her she was in a desperately ill condition, with physical lesions which had been in existence a long time.

At the time the deeds were made Mrs. Hammersley lived in her own house, No. 108 N. Greene street, Mr. and Mrs. Horner living with her as boarders. The relations between Mrs. Horner and her mother appear to have been very close and affectionate. Dr. Bevan, who visited Mrs. Hammersley constantly as her physician, says: "Mrs. Hammersley lived in the house with Mrs. Horner, who nursed her night and day, and at all times discharging the duties of an affectionate daughter; she was measurably dependent on Mrs. Horner, and preferred her attentions to those of the nurse, whoever the nurse might be. Mr. Horner was a resident of the same house, and his attentions to Mrs. Hammersley were that of a son to a mother, and she invariably spoke of him and to him in the most respectful and affectionate manner."

No one was present when the deeds were made except Mrs. Hammersley, Mr. and Mrs. Horner and the justice of the peace who took the acknowledgments.

At this age, in the condition of health and under the circumstances described, Mrs. Hammersley made a deed, on a nominal consideration, of all her property, including that derived from her husband, to her son-in-law, except comparatively small gifts to her daughter and grandchildren, making no provision whatever for her son who lived with her and was dependent upon her.

The plaintiffs contend that Mrs. Hammersley's mind was at this time so impaired by old age and disease that she had not the capacity to make a valid deed or contract. The evidence does not sustain this contention. It is true a number of witnesses, none of them experts, testified that such was their opinion, but this opinion does not rest on any very satisfactory foundation.

Their opportunities for observation were not extensive enough to enable them to form a very intelligent judgment. This evidence, if admissible at all, is of slight weight, and is completely answered by the testimony of Dr. Bevan, who says that, although Mrs. Hammersley was very ill, she was in full possession of her faculties and quite capable of understanding such a transaction as that in question.

The plaintiffs contend that the deeds were procured by fraud and undue influence on the part of Mr. and Mrs. Horner. No evidence is produced by the plaintiffs in support of this contention. They maintain, as a proposition of law, that the relations between the parties to the deeds and the circumstances under which the deeds were made throw the burden on the defendants of proving that the deeds were the free and voluntary act of Mrs. Hammersley, made without undue influence or fraud upon the part of those benefitted.

The law on this subject, as determined by the Court of Appeals in Zimmerman vs. Bitner, 79th Md., 125, is as follows:

"Although the law does not declare invalid a gift or conveyance of property to one standing in a confidential or fiduciary relation to the donor, yet courts always watch with a jealous scrutiny all such dealings and transactions, not merely for the purpose of ascertaining whether the donor understood the nature and effect of the transaction itself, but also for the purpose of ascertaining whether the benefit received by the donee was procured by reason of the influence possessed by him and exercised over the donor. And it is well settled by a long line of authorities that when such a gift or conveyance is questioned, the *onus* is

upon the donee to prove to the satisfaction of the court that the conveyance was the free, deliberate and voluntary act of the donor, and made by him with full knowledge as to its effect and operation; in other words, that he knew that the conveyance itself operated to divest him of all title to the property and to vest it in the donee."

It is incumbent on Mr. Horner to prove that the deed made by Mrs. Hammersley to him was her free, voluntary and deliberate act, and made with the full knowledge as to its effect and operation.

The evidence produced is as follows:

A document is produced by the defendants, executed the same day as the deeds, which is as follows:

"This memoranda or paper is to certify that whereas I have made certain provisions for George D. Hammersley and Elizabeth Bell (wife of John Bell), my only grandchildren, and by way of explanation why these bequests are not more I have to say that George W. Hammersley, my son (now deceased) received during his lifetime house rent free for about 20 or 25 years, amounting to five or six thousand dollars, in addition, one or two insurance policies on his life. The premiums or assessments were nearly always paid for by myself from my individual purse or that of my husband's, and these policies were paid to the above-named grandchildren, all this was in addition to his weekly salary for his services.

"This statement is made in order that I show I have not been illiberal with them. And what Mary D. Horner may do for them in the future is left with her to use her own free will, discretion and judgment.

"Witness my hand and seal this 29th day of July, 1899.

"ELIZABETH B. HAMMERSLEY

(Seal)

"Test:

MARY D. HORNER,

ANDREW J. COLLARS.

"Sworn to this 28th day of July, 1899, by Elizabeth B. Hammersley.

"ANDREW J. COLLARS, J. P."

This document is produced and filed by the defendants as a part of their case. It was made at the same time and under the same conditions as the deeds, and is subject to the same infirmities. The purpose in executing it is not fully explained. It is true she says in this document that the reason she gave her grandchildren a comparatively small portion of her property was because their father received certain sums in his lifetime, but no reason is given why her son and daughter are excluded entirely from participation in her property. The defendants do not attempt to prove the correctness of the assertion concerning the property received by the deceased son. How Mrs. Horner was to make provision for the grandchildren out of the small gift to her does not appear.

If Mrs. Hammersley was entirely under the influence of Mr. and Mrs. Horner, this document, or any other of a similar character, might have been obtained as easily as the deeds. It is as much incumbent upon the defendants to prove this document was Mrs. Hammersley's free and voluntary act as that the deeds were.

The defendants also produced four deeds from Mrs. Elizabeth B. Hammersley dated February 14, 1904. These are the same parties and purport to convey the same property conveyed by the deeds of July 29th. No reference is made to the deeds of July 29th. These deeds are precisely the same as the deeds of July 29, and appear to be copies of them. They were never recorded. The defendants produced another document, dated February 14, 1900, which is as follows:

"Whereas, on the 29th of July, 1899, I executed sundry papers and qualified to them before Justice Andrew J. Collars, J. P., and now I again execute confirmatory deeds of them and sundry other papers confirming those first signed in July, 1899, and hereby confirm and affirm each and all of them as being my own opinion in writing, my suggestions in writing, my hope and expectations.

"I have made no will. These affidavits and suggestions are specifically not intended to be a will, and are not to be so construed under any circumstances to be a will in any sense whatever. And while I am aware the way I have disposed of my property, which suits me, if it is contested by any person or persons, this writing and suggestions and requests will, to the legal mind, in order to thwart the end I wish to accomplish, look suspicious of future

trouble, and by employing fine points of law, citing of authorities on insanity, old age, collusion, and my yielding to persuasions of others, and by oratorical effect, seek to have my deeds and papers annulled; my only reason for such forestalment of what might occur, is the already and before this date attempted connivance' of my offspring to frustrate what may be arranged by me for the welfare of them that will in all human probability live after I am no more. This feature of intention to try to annul anything I may do has already come to my knowledge, and for me to prepare for such a contingency is only common sense. I have deeded my property to others for a consideration, as deemed best by me, that no one understands as well as myself, and to avoid any of my family matters being aired in court is surely a privilege that is to say the least proper and reasonable, and all courts of law and equity and all judges and juries that may, in the course of events, be called upon to hear contests of the deeds executed, or pass judgment upon these papers or deeds executed and qualified to by me at this date while I am sound in mind, are hereby requested to uphold the same to the letter no matter by whom assailed. This paper has been, as well as all other papers before signed and now signed, in my possession for many hours, yes, days, and with assistance have expressed my own ideas fully, I believe.

"I have read them over and over, and am fully cognizant of their import and effect, and I hereby suggest, request and implore that no court of justice, law or equity will annul or change them.

"Witness my hand and seal and affidavit of the same this 14th day of February, A. D. 1900.

"ELIZABETH B. HAMMERSLEY,

"Test: "ANDREW J. COLLARS.

"Sworn to this 14th day of February,' 1900.

"ANDREW J. COLLARS, J. P."

These documents are offered by the defendants without explanation. They come from their possession. The circumstances under which they were made, except the facts agreed on by counsel that those present when the document was made were Mrs. Hammersley, Mrs. Horner and Mr. Collars,

J. P., and the reason for their execution, except so far as stated in the paper itself, do not appear.

The situation of Mrs. Hammersley had not altered much in the interval between the execution of the deeds in July, 1899, and February 14, 1900, the date of the last document. She was still very ill. In fact, she never recovered her health. She still lived with Mr. and Mrs. Horner, and was as much dependent on them and under their influence as when the deeds were made. The burden is on the defendants to prove that these documents, as well as the others, was Mrs. Hammersley's free, voluntary and deliberate act. No evidence whatever is offered on this point. These documents, therefore, cannot be accepted as a ratification of the deeds, or as having much weight in determining the question of undue influence.

Mr. Horner, in his answer to the interrogatories filed with the bill, says, speaking of the execution of the deeds: "The whole transaction emanated from her, without any suggestion on my part. It was her free and voluntary act."

And Mrs. Horner says, in her answer to the third interrogatory: "It was the free and voluntary act of my mother after careful and deliberate consideration."

Mr. Horner is the beneficiary in the deeds, and his statements are discredited by his interest as well as by the circumstances under which the deeds were made. And Mrs. Horner was under the influence of her husband.

Their testimony is not confirmed by any other witness. No documents are produced except those coming from the possession of the defendants. No declarations made by Mrs. Hammersley to disinterested persons are proven.

The relations between Mrs. Horner and her mother appear to have been very intimate, and Mrs. Horner appears to have been a dutiful and affectionate daughter, and, it may be said, had claims on her mother's gratitude. On the other hand, it does not appear that Mrs. Hammersley's son and grandchildren were in any wise lacking in their duty or had done anything to forfeit her affection. Mrs. Horner, as well as her brother and the grandchildren, are excluded from all participation in Mrs. Hammersley's property,

except the comparatively small gift made to some of them, while the son-in-law is made the main object of her bounty.

The relations between Mrs. Hammersley and Mr. Horner, as appears from the evidence of Mr. Horner and Dr. Bevan, appear to have been very friendly, but it does not appear he rendered her any special service, or that she was in any way under obligations to him.

It is true he says in his answer to the interrogatories, "that the deeds were in the nature of a gift, although I paid considerable sums for her account. I lived with her for about thirty years, and our relations were very friendly and my purse was always open to her.

The amounts Horner paid for her are not proven, nor does the occasion for such payments appear in view of the fact that she lived in her own house and had a comfortable income of her own.

The only disinterested witness produced on behalf of the defendants on the issue of undue influence and fraud is Dr. C. F. Bevan. He knew nothing about the execution of the deeds. He had known Mrs. Hammersley slightly for a long time and had been her attending physician for some months before the deeds were made and afterwards until her death in 1902.

Dr. Bevan says Mrs. Hammersley was a person of unusual intelligence and force of character with a considerable experience in business, and not a person to be easily influenced.

But against this is the undisputed fact that she had been desperately ill for a good while. Her mind was necessarily enfeebled to some extent. and while she may have had the capacity to make a valid deed or contract, yet her condition rendered her particularly susceptible to the influence of those about her on whom she must have depended for advice and assistance in managing her affairs, as well as for the nursing and care she required as an invalid.

There is no other evidence on the subject of undue influence and fraud. No disinterested witnesses are called to prove that the execution of the deeds by Mrs. Hammersley was her free, voluntary and deliberate act, nor are any documents produced coming from

disinterested sources, or made when Mrs. Hammersley was free from the influence of Mr. and Mrs. Horner. No "well-settled and often declared purpose" is shown. She had no disinterested advice.

The deeds were kept a secret, and not recorded until after the death of Mrs. Hammersley. Mr. Horner says: "It was the intention of the grantor that the deeds should be recorded at once, but I wished to avoid having her harassed during her lifetime by the plaintiffs in this case, and I obtained her permission to withhold them from record."

In other words, the deeds were, through the influence of Mr. Horner, kept a secret in order to prevent the grandchildren from counteracting the influence of Mr. and Mrs. Horner. At Mr. Horner's instance and request she continued to collect the rents from the real and leasehold property until her death.

No reason has been suggested why Mrs. Hammersley should deprive herself of all her property and give substantially all of it to her son-in-law to the exclusion of her own flesh and blood.

It cannot be inferred from the evidence produced that the deeds were "the free, deliberate and voluntary act" of Mrs. Hammersley, made by her "with a full knowledge of their effect and operation."

A decree will be passed, declaring the deeds null and void.